WALDEN, Judge
(dissenting) :
My views as to what constitutes a fair trial and due process of law in this criminal case differ markedly from those of the majority.
There was a two car collision resulting in the death of a driver. Defendant was the other driver. Tried by jury, the defendant was found guilty of manslaughter by culpable negligence. He appeals. I would reverse and remand for a new trial.
There are three errors reflected which singly, and certainly in concert, are of such magnitude and impact as to manifestly entitle the defendant to a new trial.
To capsule:
1. John Nesbitt was the state’s star witness and his testimony was specially incriminating. He was the only eye witness as to the actual collision, and it is my view that without his testimony the state’s case would have failed as a matter of law.
Upon cross-examination defendant’s counsel asked Nesbitt if he had ever been convicted of a crime. The trial court sustained the state’s objection that the question was irrelevant and immaterial and refused to allow counsel to elicit a response.
As confessed by the state on appeal, this was error (although the state contends that it was harmless).
F.S. 90.08, Laws of Florida 1969, F.S.A., provides:
“90.08 Witnesses; conviction of other crimes as disqualification [. — ] No person shall be disqualified to testify as a witness in any court of this state by reason of conviction of any crime except perjury, but his testimony shall be received in evidence under the rules, as any other testimony; provided, however, evidence of such conviction may be given to affect the credibility of the said witness, and that such conviction may he proved by questioning the proposed witness, or, if he deny it, by producing a record of his conviction. Testimony of the general reputation of said witness may likewise be given in evidence to affect his credibility.” (Emphasis supplied.)
The controlling case of McArthur v. Cook, Fla. 1957, 99 So.2d 565, outlines the procedure to be followed in detail (which procedure was ignored and not followed in the instant case) and dispels any notion that the error may be disregarded if the witness’ testimony is cumulative. See also 35 Fla.Jur., Witnesses, § 233, et seq.
Thus, the defendant was denied his right to fully cross-examine and discredit the state’s key witness. Had he been permitted to do so, the procedure may well have destroyed the state’s case in the eyes of the jury and resulted in acquittal. The judgment should be reversed upon authority of McArthur v. State, supra.
2. The police prepared an accident report. It is basic that such reports per unequivocal statutory mandate are 1) confidential, 2) without prejudice to the reporting driver, and 3) are not to be admissible in any civil or criminal trial. F.S. 186.-08(2) and 186.9989, Laws of 1969, F.S.A.
*385 With this backdrop, defendant’s counsel was attempting to ask the highway patrol trooper as to his observations at the accident scene. Counsel for the state without preamble interrupted:
“MR. GONZALEZ: Your Honor, in the interest of time, I would be glad to have his homicide report introduced into evidence.
Mr. Murrell and the jury may take it back there to read it.
“MR. MURRELL: He knows that’s not proper. I simply want the man to give distances.
“THE COURT: All right. The Defense won’t join us, Mr. Gonzalez. Go ahead.”
The offer of the prosecutor before the jury was totally improper. The report was statutorily inadmissible and the prosecutor knew or should have known this. Such a magnanimous offer on his part might be likened to a before the jury offer by the prosecutor to allow a defendant, who has constitutionally chosen to remain silent, to take the stand and give his version. Consider a state offer to defense counsel to put in a suppressed confession so the jury might have the whole story. The catalog of such unthinkable possibilities could be extended.
Another aspect was to cast the defense in a poor light before the jury. It made defense counsel appear to be an obstructionist or unwilling to let the jury have pertinent information. The fatal frosting was added when the trial court arrayed itself with the state in the eyes of the jury and cast defense counsel as being uncooperative,- or worse, with this unfortunate comment:
“All right. The Defense won’t join us, Mr. Gonzalez. Go ahead.”
This procedure in my judgment was most harmful and dictates a reversal and a new trial.
3. In his closing argument the state appealed for sympathy for the victim, when the prosecutor said:
“Mr. Murrell says you are going to let this twenty-three year old boy be the victim of all this. How about the eighteen year old boy that’s not here today ? How about that guy ? Huh ? How about his buddy that said, T don’t ever remember James Watford drinking. I remember seeing him going thirty-five or forty-five miles per hour’?
“I think he was minding his own business, just driving along there, probably going to town or going somewhere. How about that guy? How about a little sympathy for him ?”
Further, the defendant’s counsel was improperly prohibited from performing his advocate’s function when just shortly prior to the above argument this exchange took place:
“Now, Robert O’Neil testified that he followed the victim of this thing. He followed a hundred yards—
“MR. MURRELL: I object to him using that term, Your Honor, and move for a mistrial.
“THE COURT: The objection is noted in the record. They will be instructed as to the weight to be given to the closing argument. The motion for mistrial will be denied. I do not want Mr. Gonzales interrupted again.” (Emphasis supplied.)
This point merits reversal upon authority of 32 Fla.Jur., Trial, § 132; Russell v. State, Fla.App.1970, 233 So.2d 154; Stewart v. State, Fla.1951, 51 So.2d 494.
To sum up, it is my feeling that defendant has not received that full, fair, evenhanded trial to which he is entitled by law. I would not exonerate him; I would simply afford him a new trial, attended with those precious notions of fair play which are accorded by our law and American tradition.